GLEN (MAIN v.). See Case No. 8,973.

GLENDALE ELASTIC FABRICS CO. (SMITH v.). See Case No. 13,050.

GLEN IRON WORKS. See Case No. 17,636.

GLENN (ATKINSON v.). See Case No. 610.

## Case No. 5,480.

GLENN v. HUMPHREYS.

SWIFT v. SAME.

[4 Wash. C. C. 424.] [1]

Circuit Court, E. D. Pennsylvania. Oct., 1823.

STATE INSOLVENT LAWS — CONSTITUTIONALITY — EFFECT OF DISCHARGE—PRACTICE.

1. A state insolvent law, which discharges the debt, and the person of the insolvent, is unconstitutional as to the debt, but not as to the person.

[Cited in Woodhull v. Wagner, Case No. 17,975.]

[Cited in Trustees of Pub. Schools v. City of Trenton, 30 N. J. Eq. 684.]

2. The United States are not affected by discharges under state insolvent laws.

[Cited in Cook v. Moffat, 5 How. (46 U. S.) 316.]

3. Practice of this court in discharging on common bail, where the defendant has been discharged under state insolvent laws.

Rule upon the plaintiffs to show their cause of action, and why the defendant should not be permitted to appear on common bail, having been discharged as an insolvent under the laws of the state of Maryland. The case was as follows: Swift, being a debtor to the United States in a considerable sum, applied to the secretary of the treasury to be discharged as an insolvent, upon surrendering all his estate to the United States, agreeably to the provisions of the act of congress. Swift received his discharge by an instrument under the hand and seal of the secretary, bearing date the 4th of December, 1819, and on the 6th of the same month and year, he executed to the secretary an assignment of all his estate, real, personal and mixed, for the use of the United States. The defendant was a debtor of Swift, by three notes of hand, one bearing date at Barbadoes the 17th of July, 1819, payable three years after date, at a certain bank in the city of Baltimore; and by two others, dated in Baltimore the 4th of December, 1819, payable eighteen months after date, and the 26th of October, 1819, payable

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[1] [Reported by Samuel Blatchford, Esq.]

three years and a half after date, which last notes were indorsed in blank. The first note was indorsed to Glenn, the district attorney of the United States for the district of Maryland, for the use of the United States, in whose name one of these suits is brought; and the other two in the name of Swift. On the 7th of September, 1820, the defendant paid a part of the first note to Mr. Glenn, which is credited on the face of it. Mr. Glenn states in his deposition, that at the time of the delivery of these notes to the district attorney, he believes the insolvency of Humphreys was not contemplated. On the 6th of September, 1820, the defendant was duly discharged, as to his person, by the commissioners of insolvent debtors for the city and county of Baltimore, and, on the 31st of August, 1821, he was finally discharged by the same tribunal from all debts, &c., due or owing by him before the 6th of September, 1820, provided, that any property he might acquire by gift, descent, or in his own right by devise, or in a course of distribution, should be liable to the payment of his said debts.

It was contended by the district attorney, that the United States are not subject to, or affected by the insolvent laws of the states under which their debtors may be discharged. U. S. v. Wilson. 8 Wheat. [21 U. S.] 253. And if they were, that the Maryland law, authorising the discharge of a debtor from his debts, is unconstitutional and void. If not so, still, as it may be doubtful upon the deposition which has been taken, whether the defendant did not, after his discharge, agree to pay these notes to the United States; the court ought to discharge on motion, but should put the defendant to plead his discharge as an insolvent.

Joseph R. Ingersoll, for the rule, in answer to the first point, insisted, that the case cited, applied to original debtors of the United States, and not to those who have been turned over by assignment to the United States; who, in such a case, can claim no higher privilege than the person could under whom they claim. (2) That the final discharge from the debts of the insolvent, may be unconstitutional; but the personal discharge is not, and this is sufficient to warrant the court in making the present rule absolute. 16 Johns. 233; 17 Johns. 108; 18 Johns. 54. As to the last point, he relied on the practice of this court, to discharge on motion, in all cases.

Charles Ingersoll, for plaintiffs.
Joseph Ingersoll, for defendant.

WASHINGTON, Circuit Justice. The unconstitutionality of the law of Maryland, so far as it attempts to authorise a qualified discharge of an insolvent from his debts, does not affect, or invalidate that part of the laws which discharges the person of the insolvent from imprisonment. As to the objection to the mode of proceeding in this case, there is nothing in it. It is consistent with the practice of this court, in the many cases which come before us. This practice rests in the discretion of the court, and is acted upon where there are no material facts in controversy between the parties. Where there are, and the court cannot satisfactorily decide upon them, I should, in such cases, refuse to interfere in a summary way, and leave the defendant to plead his discharge. In the one now under consideration, there is no fact material to the question of bail, about which a doubt can exist. It is not even insinuated in the deposition which has been taken, that the defendant entered into a new contract at any time with the United States, after his discharge, to pay this debt. He assented to the assignment by Swift of his notes, to the United States; but such assent was unnecessary, and even that preceded his discharge. But I am of opinion, that the case of U. S. v. Wilson [supra] is in point to show, that the United States are not affected by state insolvent laws, which profess to discharge the persons of their debtors, and that it is strictly applicable to this case. The debts due by the defendant to Swift, were equitably transferred to the United States on the 6th of December, 1819, and his notes were assigned in the year 1820, long before the discharge, and were before the contemplated insolvency of the defendant, as is proved by the witness. His person, then, never was discharged from these debts before the United States became his creditors; at which time, he stood in relation to the United States, for what was due to Swift, in the same situation as an original debtor. Rule discharged.